IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RACHEL A. MULLINS, | ) | CASE NO. 3:20CV747 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JAMES R. KNEPP II |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Rachel Mullins ("Mullins") seeks judicial review of the final decision of
Defendant Commissioner of Social Security ("Commissioner") denying her applications for
disability insurance benefits ("DIB") and supplemental security income ("SSI").  Doc. 1.  This
Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This matter has been referred to the
undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule
72.2(b)(1).

For the reasons explained below, the undersigned recommends that the Commissioner's
decision be **AFFIRMED**.

### I. Procedural History

Mullins filed applications for DIB and SSI in November 2016, alleging a disability onset
date of October 22, 2016.  Tr. 12.  She alleged disability based on the following: midline low
back pain, bulging lumbar discs, levoscoliosis, compression fracture of the cervical spine,
degenerative disc disease, degenerative arthritis in back, chronic pain syndrome, diabetes,
anxiety, and panic attacks.  Tr. 221.  After denials by the state agency initially (Tr. 86, 87) and
on reconsideration (Tr. 103, 119), Mullins requested an administrative hearing.  Tr. 134.  A

hearing was held before an Administrative Law Judge ("ALJ") on August 10, 2018. Tr. 30-57.
In his December 3, 2018, decision (Tr. 12-22), the ALJ determined that there are jobs that exist
in significant numbers in the national economy that Mullins can perform, i.e., she is not disabled.
Tr. 21-22. Mullins requested review of the ALJ's decision by the Appeals Council (Tr. 183) and,
on February 4, 2020, the Appeals Council denied review, making the ALJ's decision the final
decision of the Commissioner. Tr. 1-3.

## II. Evidence

### A. Personal and Vocational Evidence

Mullins was born in 1975 and was 41 years old on the alleged disability onset date. Tr.
20. She completed two years of college and last worked part time in October 2016 as a cashier at
a grocery store. Tr. 37-38.

### B. Relevant Medical Evidence[1]

Neither party supplies evidence regarding Mullins' treatment for anxiety and panic
attacks. Mullins testified that she was prescribed Xanax by her primary care physician for
anxiety and panic attacks. Tr. 43, 646.

### C. Opinion Evidence

#### 1. Consultative Examiner

On February 27, 2017, Mullins saw Dr. Evans, Ph.D., for a consultative examination. Tr.
632-636. At that time, she was living in a house with her son and she reported having
"excellent" and "great" relationships with family members when growing up. She reported
having worked at Burger King in the past for 7.5 years and that she got along well with her co-
workers. She got along well with people in general. She stated that her psychiatric symptoms

---

[1] Mullins only challenges the ALJ's decision regarding her mental impairments. Accordingly, only the mental
health evidence is summarized and discussed herein.

began to affect her in the workplace three years ago.  When asked how, she answered that she would call in sick a lot.  When asked how she responded to typical workplace stressors, she answered, "I just did the best I could."  She denied having problems with authority figures or following directives.  She had never seen a psychiatrist or received mental health counseling.  She had a driver's license and drove, performed housework, went grocery shopping with her son, and managed a checking and savings account.  When asked to describe a typical day, Mullins stated that that she stays home and takes care of her house and son.

Upon exam, she had appropriate grooming and hygiene, good eye contact, was cooperative and friendly, rapport was easily established and maintained, she had normal speech and thought process and content, and she showed no signs of agitation or restlessness.  Her insight and judgment were adequate.  She described her current mood as nervous and her typical mood over the last two months as "anxiety comes and goes."  Dr. Evans observed her mood to be euthymic and that she had a mildly anxious affect.  She denied depression, crying spells, mood swings, and mood lability.  She reported that she started having panic attacks 7-8 years ago, they had no apparent trigger, and that they have gotten worse over time.  She described her symptoms as increased heart rate, shortness of breath, nausea, and lightheadedness in public "until I leave."  She could spell the word "world" backwards, recall 2 out of 3 words after a 5-minute delay, and recite 7 digits forward and 5 digits backwards.

Dr. Evans concluded that Mullins met the criteria for panic disorder and agoraphobia.  He opined that she appeared to have no difficulties in understanding, remembering, or carrying out simple to moderately complex instructions in a workplace setting.

### 2. State Agency Reviewing Physicians

In March 2017, state agency reviewing psychologist Dr. Reid, Psy.D., reviewed Mullins'

file.  Dr. Reid assessed her anxiety as non-severe and, regarding her residual functional capacity, opined that Mullins could have "occ[asional] interaction with the general public, no crowds" and typical workplace interactions with co-workers and supervisors; could work in a setting in which duties are routine and predictable, and that significant changes in job duty should be explained in advance.  Tr. 65, 68-69.  In April 2017, state agency psychologist Dr. Kravitz, Ph.D., affirmed Dr. Reid's opinions.  Tr. 99.

### D.  Testimonial Evidence

#### 1. Mullins' Testimony

Mullins was represented by counsel and testified at the administrative hearing.  She testified that she lives in a house by herself; her adult son had recently moved out.  Tr. 35-36.  She has a driver's license and is able to drive, although she does not drive often or far.  Tr. 36.  She doesn't leave the town she lives in due to anxiety and pain.  Tr. 37.

Mullins stated that she stopped working her cashier job in 2016 because she was in a great deal of back pain from standing, stocking shelves, and cleaning, and that, as a result, she would return home crying every night.  Tr. 39-40.  Anxiety and panic attacks also prevent her from performing full time work.  Tr. 41.  She developed anxiety about three or four years prior to the hearing (in 2014 or 2015).  Tr. 42.  She doesn't know where it comes from; "It's just one day I had a panic attack and I had no idea what it was."  Tr. 42.  She has a panic attack a couple of times a month.  Tr. 42.  When she has one, she feels like she's going to have a heart attack.  Tr. 42.  She feels like the walls are closing in and that something is wrong and she has to focus on her breathing.  Tr. 42-43.

When asked if she has received mental health treatment, Mullins answered that she has not.  Tr. 43.  Her primary care physician gives her medication to help with her panic attacks and

she takes her medication, Xanax, as needed.  Tr. 43.

### 3. Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the hearing.  Tr. 50-56.  The ALJ asked the VE to determine whether a hypothetical individual of Mullins' age, education, and work experience could perform work if that person had the limitations subsequently assessed in the ALJ's RFC determination, described below.  The VE answered that such an individual could perform the following jobs that exist in significant numbers in the national economy: PC board assembler, lens inserter, and bonding machine operator.  Tr. 51-52.

### III. Standard for Disability

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.      If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.      If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.      If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920;[2] *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the

Commissioner at Step Five to establish whether the claimant has the vocational factors to

perform work available in the national economy.  *Id.*

## IV. The ALJ's Decision

In his December 3, 2018, decision, the ALJ made the following findings:

1.      The claimant meets the insured status requirements of the Social Security Act through September 30, 2021.  Tr. 14.

2.      The claimant has not engaged in substantial gainful activity since October 22, 2016, the alleged onset date.  Tr. 14.

3.      The claimant has the following severe impairments: degenerative disc disease, obesity, and anxiety.  Tr. 14.

4.      The claimant does not have an impairment or combination of

---

[2] The DIB and SSI regulations cited herein are generally identical.  Accordingly, for convenience, further citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq.  The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds to 20 C.F.R. § 416.920).

impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 15.

5.      The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: She can stand and walk four hours in an 8-hour workday.  She can briefly sit or stand once every 30 minutes provided, however, that she does not leave her workstation.  She can occasionally climb ramps and stairs.  She can never climb ladders, ropes or scaffolds.  She can frequently balance and crouch.  She can occasionally stoop and crawl.  There should be no more than occasional changes in the workplace tasks and setting, and any changes should be well explained in advance.  Finally, she is limited to occasional contact with co-workers and members of the public.  Tr. 17.

6.      The claimant has no past relevant work.  Tr. 20.

7.      The claimant was born in 1975 and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.  Tr. 20.

8.      The claimant has at least a high school education and is able to communicate in English.  Tr. 21.

9.      Transferability of job skills is not an issue because the claimant does not have past relevant work.  Tr. 21.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  Tr. 21.

11.     The claimant has not been under a disability, as defined in the Social Security Act, from October 22, 2016, through the date of this decision.  Tr. 22.

## V. Plaintiff's Arguments

Mullins argues that the ALJ erred when he assessed the state agency reviewing psychologists' opinions.  Doc. 17, 20.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact

unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989) (per curiam) (citations omitted)).  A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

Mullins argues that the ALJ erred with respect to the state agency reviewing psychologists' opinions because the ALJ did not discuss those opinions when assessing Mullins' RFC.  She also argues that the ALJ erred because his RFC did not account for all the limitations in the state agency reviewing psychologists' opinions.  Doc. 17, pp. 6-8; Doc. 20, pp. 3-6.

At step three, the ALJ assigned great weight to the state agency reviewers' opinions regarding whether Mullins' mental impairments met or equaled Listing 12.06, which pertains to anxiety and obsessive-compulsive disorders.  Tr. 17.  The ALJ explained that Mullins had mild limitations understanding, remembering, or applying information and concentrating, persisting, and maintaining pace, and moderate limitations interacting with others and adapting and managing oneself.  Tr. 16.  In support of his conclusion, he remarked that Mullins had been prescribed Xanax but had never seen a psychiatrist or participated in counseling, and she had gotten along well with others in general, coworkers in her past work, and had no problems with authority figures.  Tr. 16.

Later in his decision, when discussing the medical evidence, the ALJ again remarked that Mullins had had no mental health treatment other that a Xanax prescription she received from

her primary care physician since at least 2007 and which, she had stated, she took only a couple of times a month. Tr. 18. The ALJ also commented that, in December 2016, Mullins told her primary care physician that her Xanax controlled her panic attacks. Tr. 19.

The ALJ then discussed the consultative examiner's opinion, observing that Dr. Evans had found that Mullins had no limitations understanding, remembering, or carrying out instructions and that she displayed good attention and concentration. Tr. 20. He assigned "some" weight to Dr. Evans' opinion because, while it was not stated with specificity, it was consistent with the record as a whole indicating that Mullins' mental health impairments do not significantly limit her ability to perform work. Tr. 20. The ALJ concluded that the record evidence did not support any restrictions in addition to those that the ALJ provided for in his RFC assessment, commenting that the record showed "very little treatment" for Mullins' impairments and again noting that she did not seek any specialized treatment for her mental health. Tr. 20.

Although the ALJ did not mention the state agency reviewing psychologists' opinions again in his decision (after discussing them at step three), it is clear that the ALJ relied on their opinions because he adopted them in his RFC assessment. First, and most notably, the state agency reviewing psychologists' opinions are the only opinions in the record that set forth any limitations. Second, the ALJ's RFC included those limitations. The state agency reviewing psychologists had opined that Mullins could have "occ[asional] interaction with the general public, no crowds," typical workplace interactions with co-workers and supervisors, work in a setting in which duties are routine and predictable, and that significant changes in her job duties should be explained in advance. Tr. 65, 68-69, 99. The ALJ's RFC limited Mullins to no more than occasional changes in workplace tasks and setting with any changes well explained in

advance and occasional contact with co-workers and members of the public.  Tr. 17.  Because

the ALJ's RFC assessment is consistent with the state agency reviewers' opinions, any error the

ALJ may have made in not discussing those opinions at step four in his decision is harmless.

Mullins argues that the ALJ's RFC did not account for the state agency reviewing

psychologists' opinion that Mullins requires a work environment that is routine and predictable

and that she should not be around crowds.  Doc. 17, p. 8; Doc. 20, pp. 4-5.  The undersigned

disagrees.  The ALJ's limitation that Mullins have no more than occasional changes in

workplace tasks and setting with any changes well explained in advance accommodates the state

agency reviewers' opinion that Mullins work in an environment that is routine and predictable.

The ALJ's limitation that Mullins can have occasional contact with coworkers and member of

the public accommodates the state agency reviewers' opinions that Mullins can have

"occ[asional] interaction with the general public, no crowds" and typical workplace interactions

with co-workers and supervisors.

Mullins contends that the ALJ only accounted for half of the state agency reviewers'

opinions because occasional interaction with the public only addresses the frequency of Mullins'

ability to interact and not the quality or type of interaction.  Doc. 20, p. 5 (citing *Lindsey v.

Comm'r Soc. Sec.*, 2018 WL 6257432, at \*4 (S.D. Ohio Nov. 30, 2018).  In *Lindsey*, the court

found that the ALJ failed to adequately explain why he limited the claimant to "occasional

interaction with others" when the state agency reviewers limited the claimant to "superficial

contact with the public, coworkers, or supervisors," observing, "[t]he terms 'occasional' and

'superficial' are not interchangeable."  *Id.*  But here, the state agency reviewers did not limit

Mullins to "superficial" contact; they limited her to occasional contact with the public, no

crowds.  Under the ALJ's RFC, Mullins would potentially interact with crowds only

occasionally, or 1/3, of the time. Thus, the ALJ's RFC takes into account a limitation regarding crowds.

To the extent that Mullins argues that the ALJ's RFC should have included, verbatim, the limitations assessed by the state agency reviewers, her argument fails. It is well-established that an ALJ need not adopt an opinion verbatim. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."); *Smith v. Comm'r of Soc. Sec.*, 11-cv-2104, 2013 WL 1150133, at *11 (N.D. Ohio Mar. 19, 2013) ("Simply put, there is no legal requirement for an ALJ to explain each limitation or restriction he adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight."), *aff'd* (6th Cir. Jan. 30, 2014) ("While Smith contends otherwise, there is no requirement that an ALJ adopt the entirety of a state expert opinion, even if affording it significant weight, or that the ALJ provide an explanation for why certain limitations proposed by the expert were not incorporated into his residual functional capacity assessment.").

To the extent that Mullins argues that it is not clear from the ALJ's decision why he assessed the limitations that he did, the undersigned disagrees. The ALJ repeatedly stated why he found Mullins' impairments to be not disabling: she did not see a mental health practitioner; she received medication from her primary care physician for her anxiety and panic attacks beginning in 2007; she only took her medication a couple of times a month; her medication helped; and she reported having gotten along with coworkers and others in general when performing her past work as a cashier in a grocery store. Mullins does not challenge the ALJ's recitation of this evidence. The evidence cited by the ALJ is sufficient to support his finding that

Mullins can have occasional contact with the public and coworkers.  *See id.* ("Furthermore, a review of the record reveals substantial evidence to support the ALJ's residual functional capacity assessment without the limitations Dr. Lewin proposed concerning superficial interaction with co-workers and supervisors and Smith's ability to complete a normal work week.").

## VII. Conclusion

For the reasons set forth herein, the undersigned recommends that the Commissioner's decision be **AFFIRMED.**

Dated: May 3, 2021

/s/Kathleen B. Burke
Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).